Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Good afternoon, counsel. I'm Judge Keenan. Judge Richardson, Judge Wynn, and I are pleased to be hearing your cases today. We'll hear first from Mr. Miller. Mr. Miller, would you like to proceed? Thank you, Your Honor. Good afternoon. If it pleases the court, I'm Marvin Miller for Mr. Harley. This is a civil case, outside of my normal bailiwick, and Mr. Harley filed suit seeking to have the court determine whether or not the application of 18 U.S.C. 922 G9, which is a ban on possessing firearms by individuals convicted of domestic violence, was constitutional as applied to him individually. The court, as has the government in their briefs, principally relied on and focused on cases as to whether or not the statute was constitutional. And there were a number of cases that were brought after the Supreme Court's bans on possession of firearms, and the challenges were applying the ban to the Second Amendment in light of Heller. In that context, they were as applied. This case, however, is different. It's not that kind of as applied case. This is a case that is more like Inslee and what this court did in the Hossford case, because this case focuses on the as applied to the individual specifically under their own personal circumstances. And it's not an as applied case focusing on a conviction in a criminal case like almost all the cases cited by the government, except for maybe Stimmel from the Sixth Circuit. This is a case that looks at the Second Amendment as applied to Mr. Harley individually. Individual as applied challenges are recognized by this court. Let me understand what you just said. Essentially, you're saying every case of this sort, an individual would be entitled to a constitutional analysis as to whether it's unconstitutional as applied to him or her. That's possible, and that's recognized in the law. In the Inslee case, for example... I'm not saying it's recognized in the law and possible. I'm asking, is that what you were saying about this case, that every individual who faces this situation here, dealing with domestic violence, and I don't know if there's a time element of when it pops up, but I guess that's part of the as applied analysis, but potentially every one of them can come in court, and if we rule in your favor, they will be entitled to a constitutional analysis that would be specific to them only and wouldn't mean a thing in the world to the next case. And so we're just going to have... Well, you see where that's going. I see where your question is going, but I don't think that that's a practical consequence to expect. Lawyers, of which I am one, do not take frivolous cases, and by and large, most of the individuals who have bans under this provision of the law deserve it. Well, why isn't Statton on point here? I mean, that's an as applied case. Has that resolved this case? Statton does not solve this case because Statton is not an as applied individual case. Statton was a criminal conviction. He didn't oppose the government's... Why does it matter that you are analyzing it from a criminal perspective as to whether you are challenging it, a criminal statute, as to whether it's constitutional? Why does that matter from a constitutional... There are more than one way to challenge a criminal statute. And there's more than one constitutional challenge that can be brought. Well, you brought up the Holford case. Isn't that a criminal case? That was a criminal case, and it had this kind of challenge in it, which Statton did not. And there's a distinction between constitutional challenges, and they are different one from the other. The difference is that in Statton, it was the category of anybody with a conviction for domestic violence. In Holford, what they did is he did a statutory attack, and he also did an individual as applied focus on him individual. This court looked at him individually. They determined that he was involved in five sales of more than eight guns, kept no records, didn't check about any of the purchases as to whether or not they're even lawfully entitled to have firearms, and said to him, as to him, no, you can't do it, which is like in the same case from the Seventh Circuit, where they said at page 645 of that decision that there are individuals whose personal circumstances would allow them to make a challenge. That case wasn't won, and they rejected it, but they recognized that you can't do it. I'm still having some difficulty understanding what was different from Mark Statton's claim that he said, you know, this 922G9 is unconstitutional as applied to me under the Second Amendment. He didn't say that. Well, that's what he said. He didn't say that. Well, let me read the quote to you. The sole issue on appeal is whether Mark Statton's conviction on one count of violating 922G9 survives his as applied constitutional challenge under the Second Amendment. That's correct. That is correct so far as you went, but if you don't mind, there's another part of it. Here we are. He was challenging, when you read the case as a whole, the category of domestic violence defendants who are convicted, not himself. He was going after the category of people that fit that description within the code. He was not, and I don't see anywhere in that decision where he said, look at me individually. He said, look at the category of people. Counsel, to be clear, in the briefing on Statton, Mr. Statton disclaimed his own personal characteristics in the reply brief as a ground for it being unconstitutional. In fact, he said, because Mr. Statton himself had three different convictions, he was still on probation, and he said, this isn't about me. This is about the group of people. That's correct. We can't use Statton to suggest that it rejected a challenge that wasn't made, is what you're saying. What I'm saying is that the decision itself did not look at him individually and did not address his individual circumstances. It looked at the category of people who have this type of conviction, and what we're saying is that we are entitled to have what the Fourth Circuit has recognized in Inslee and Hosford, which is an analysis of Mr. Harley. Let's not leave Statton, and I want to make sure we're clear on it, because I don't want you to lose me, because I'm getting your point. But Statton was an as-applied case. You are making a distinction that we ought to treat individual cases different from the categorical. Is that what you're saying? A categorical case, I think, with all due respect to this court, that the as-applied challenge misleads this court from where this particular challenge is. That was as-applied to the category. There's more than one as-applied challenge. This is not as-applied to the category. This is as-applied. Yes, Your Honor. Mr. Miller, the problem I'm having with your argument is you seem to be asking us to apply a good behavior qualification to the statute that just isn't there. I mean, the statute's pretty clear that Congress is intending to cast a very wide net to prevent domestic violence in the future. And here, there's no language in the statute. And if we were to adopt your rationale that you look at the individual to see if they've been of good behavior, then why wouldn't that apply to numerous other statutes? And statutes wouldn't mean what they say anymore. We would be reading in good behavior exceptions to every statute, whether criminal or civil. If you look to the language of the statute as your guide, then that means that Inslee was wrongly decided and is not the law of the circuit. Because in the ABC regulation in Inslee, there was no exception for newspapers where the majority of those who received the publication and were the – those who followed it were adults. Right. It wasn't in the code. Excuse me, but Mr. Miller, your client was convicted of the crime, okay? So what in the statutory language permits us to conduct a review of his good behavior? I mean, because – and if I could follow up. If, then, out of 100 people who are convicted of this, 75 of them are of good behavior later, each one of them under your rationale would have a right to attack the statute as constitutionally infirm as applied to them. I think that there's more to it than that, if Your Honor, please. What we're looking at here is the Constitution allows specific analysis of an individual in the context of an application of a statute to them. And that is permitted. And that is – and if it weren't, then there would not have been an Inslee case. And the decision where it says on page 288 and 301, you look at the specific plaintiff and their characteristics, those words would have to be stricken. And to strike that from the Fourth Circuit precedent will require an en banc hearing. Because they said at 288 – I'm sorry? Will you talk for a second about the Hamilton decision? Because Hamilton addresses a different G provision, G1 instead of G9. Yes. And the court says there that at least where someone's been convicted of a serious felony, that we're not going to do an individualized analysis. That's because – there's a reason for that. And it also says – There's a reason for that. Well, let me finish the question. Excuse me, Mr. Miller. You need to let Judge Richardson finish before – I apologize. I know this is – No, this setup is a little difficult for everybody. But please be careful to let him finish his question. I apologize, Your Honor. So it says where there's a serious felony, we do not do an individualized consideration. But the court goes to pains to say that where something is not a serious felony, for example, something that's categorized as a state law misdemeanor but meets the federal definition of a felony, that is, punishable by imprisonment for more than two years, that in that scenario we could well do an individualized analysis that looked at – because it's a non-serious offense, we might well look at things like rehabilitation and time and the nature of the offense to determine whether the Second Amendment prohibits the application of the statute in that very case. I mean, Hamilton, to me, seems exactly what you're suggesting that we do. You're exactly correct. And if you look at Binderup from the Third Circuit, you'll see how that applies. One of the plaintiffs in Binderup had consensual relations with a minor he didn't know was a minor. He was convicted of a misdemeanor. Except in Maryland, it was a three-year misdemeanor defined under federal law as a felony. The other individual was intoxicated driving a car in Pennsylvania. He had a 357 and some speed loaders in it, and that's a misdemeanor, but the maximum penalty can be five years. The Third Circuit in Binderup said these are not serious. They looked at the penalties. They were minor. It's like Mr. Harley got a $75 fine, no good behavior, no probation, no nothing. Pay $75 and get out of here. That's it, which is unusual for Fairfax JNDR court in a domestic violence case unless it's absolutely nothing. So what we had in both Hamilton and in Binderup and what the circuit recognized in the scheme case in the Seventh Circuit is there are individuals as to whom there is an entitlement to individual scrutiny and consideration. And you're absolutely correct. The problem, though, is that 922G9 is already specific, and domestic violence is not a non-serious offense. Congress has already decided that. So it's different from Hamilton in that regard because you've got 9229, which is already set forth as a very specific offense here. And so you don't get a broad category of whether it's a felony, that's a valid one that you do in 1 and 4, maybe, of G. You've got a more specific situation here. Well, in Hamilton, it was a felony, which by definition is a serious offense. And what the court said – Which one was that? Was that G4 or G1? Which one? No, that was G1, which is felony, G1A. You can see why G1 would be there. That's a broad category of folks. That could be all kinds of people all over the place. 9 is very specific. It tells you right there this is what it's dealing with, and Congress has already told you that a domestic violence is not a non-serious offense. A felony is a serious offense, but not all domestic violence. I'm just dealing with the specific aspect of 9. I can go with you if we were talking 1. Well, I would say I'd go with you, but I got the point on 1, maybe even 4. But 9 is specific. 9 is specific, but you have to look at the facts behind cases to see whether or not they're worthy of individual scrutiny. Not if Congress has already told you that it's not a non-serious offense. Congress has already told you that here. You're not going to get there by looking at factors. You're not going to make that a non-serious offense by looking at factors. Well, if you can't make it a non-serious offense by looking at factors and looking at sentences and looking at the individuals, then what you're saying is there is no conceivable way that a person under the Second Amendment gets the same fair treatment as somebody under the First Amendment. And as the court said in Heller, the amendments aren't graded. They're all the same. They're not. They're not graded, but it's not a Second Amendment. You're dealing specifically with what Congress has done. And that is the G9 one here. And it is important. It's made this specific point here, and it essentially makes that differentiation. You don't get a question of whether or not there's first or second on here. You've got a level of scrutiny here, the intermediate scrutiny, which Staten and City applies here, and it meets it. Here's the situation. If Congress passes a law – Excuse me, Mr. Miller. Yes, ma'am. Excuse me, Mr. Miller. Before you go on, you are eating into your rebuttal time, so you make a decision. Your remaining time is by May, please. Thank you. Okay. Thank you. Ms. Traer? Thank you, and may it please the Court, Tyler and Traer for the government. I just want to begin with the Staten case, which was an as-applied challenge. And as this Court is aware, the Fourth Circuit went on to rely on Staten to reject subsequent as-applied challenges. That's in Chester and in Tooley. And I think Chester is particularly instructive. Give me some clarity on your understanding of what your opposing counsel is referring to when he's saying, it seems to say you can have an as-applied categorically, but it's different from the individual one, and this is individual. So we've got to take it individually to go and bring everybody, let everybody come to court, individually assess whether they have an as-applied challenge. And that seems like to me that's the differentiation, but clarify me on that if I'm wrong, that he's given on Staten. I think my friend on the other side is fundamentally mistaken about what an as-applied challenge, Second Amendment challenge, looks like. And I think it's very clear from this Court's precedent, as well as the Courts of Appeals, who have uniformly upheld Section 922G9, that as- In answer to that question, so when I read our circuit's decisions in cases like Smoot and Moore, when they describe the as-applied challenge as a two-step process, we sometimes refer to the Chester two-step process, and then we say, and in addition, there's a different way you can do that, and that is if he can show, quote, that his factual circumstances remove his challenge from the realm of ordinary challenges. And that this is the same basis, this is what Hamilton's quoting, when it says, yes, we can do that individualistic challenge, but not where the offense is itself serious. Well, I'll just point out, to begin with, that plaintiff doesn't rely on cases such as Moore and Smoot, and so I'm not as familiar with the facts of those cases, but I think what your Honor's question is getting to, and this is a misunderstanding by my opposing counsel when it comes to the Bindrup case, as well. In many of these cases, the Court employs a two-step analysis, and in many of these cases, at the first step, the courts look to whether or not an individual can distinguish himself or herself from the class of persons historically barred. Now, of course, this Court has assumed in Statton that this restriction burdens a Second Amendment right without definitively deciding the case. It looks like not only this Court, but virtually all courts assume that first prong, and that's where you get the individualized. The question is, should the individualized be applied to the second prong? Well, and to return to your earlier question, Judge Winn, I think my opponent's, the thrust of my opponent's argument is really dissatisfaction with an intermediate scrutiny analysis, and this Court's precedent is quite clear. First of all, the intermediate scrutiny applies. Second of all, the Court in Statton was very clear that 922g9, in particular, it may be the case that it might slightly burden more conduct than is necessary, but not more than is reasonably necessary. But the Court emphasized in Statton that intermediate scrutiny does not require a perfect fit, consistent with the Supreme Court's decision in edge broadcasting. It requires a reasonable fit. It seems to me, you know, one of the differentiating factors here is the appellate, I think, recognized below that this is a 922g9 case. When you're looking at smooth board, those are g1 cases. And when you look at g1, that's a whole different ballgame when you're talking about punishable by imprisonment up to one year. That's a broad category of stuff. But g9 is specific, and Congress has already told us that cannot be a non-serious offense. Whereas, one, you can find non-serious offenses with it. So I don't, it seems like to me that's a strong differentiating fact when we are saying that Statton doesn't apply and looking at how it comes with this case. So I want to make two points in response to your question, Judge Wynn, that I think are very important. One, yes, that it is very important in differentiating g9 from g1, that the entire reason behind g9 is that a dangerous loophole, as Congress described, had emerged by the mid-1990s that we understood that the felon in possession ban at g1 was not keeping guns out of the hands of individuals who had committed domestic violence crimes and that who were likely to go on to misuse firearms with devastating consequences for their intimate partners and family members. So in a case like this, I want to just put a pin there, because this g9, this does look like it's very harsh. I mean, you're talking about something that happened a long time ago. But what's drawing me back to at least dealing with this differently is this is Congress. They made that decision. They can fix it if they want to. Well, I guess it can go and get a pardon for the governor or something on it. There are other avenues, but we didn't do this. We didn't call this an offense that cannot be non-serious type offense. Congress did. And as you say, Congress enacted this to close this so-called loophole, and it didn't put a time on it, anything on it. And it just fundamentally, I agree, it doesn't sound like it's right to me from the perspective of the plaintiff here, but that's the law, and one is totally different. And when you look at Smoot and Moore, those are g1 cases, and I don't know a case like this that's dealing with this kind of issue in this manner. So I completely agree with you, Judge Wynn, and I think that goes back to Judge Keenan's earlier point that there is no good behavior exception legislated into 922 g9. And as the other courts of appeals who have uniformly rejected identical as applied challenges have noted, accepting plaintiff's theory in that way would read a gigantic loophole into this statute. And as your honor noted. Counsel, I just want to make sure I understand. These are sort of like maybe technical questions, but they matter. And I trust that you, if you know the answer, will help me understand them. A g9 offense, such as the Virginia statute that Mr. Harley was convicted of, can be committed with reckless intent, right? It doesn't require any intentional conduct. It can require reckless intent. I believe your honor is referring to the Waseem case. Yes. Yes. And this statute in particular, the very statute that Mr. Harley was convicted under, at least under Trent v. Commonwealth and a number of other Virginia cases, you can be convicted of that based on merely reckless conduct. You don't need to confirm that. Let me just tell you, accept that as a hypothesis. It's true. But I'm not asking you to know the case law. And then this is the point I want to add to it. If I look at paragraph 10 of the complaint, at least as is alleged, Mr. Harley seems to allege that he reached in to grab the car and in doing so grabbed his wife's arm. Now, you suggest that's not the whole story, and I understand that. But this is at summary judgment. And at some level he has an affidavit on it, and maybe there needs to be a factual finding. But if we accept that it can be a conviction based on reckless conduct, and if we accept the conduct here was an attempt to grab the frame of the door to keep from falling, and instead he grabs his wife's arm, if that's true, as alleged and supported by affidavits, could a court not find that that's not a super serious offense as supported by the fact that it's a $75 fine and he continues now to have the support of his wife, who was the alleged victim at the time, that at least plausibly on a summary judgment standard, that maybe G-9 is not quite as specific as it might appear on its face because we can have merely reckless conduct that results in a touching of a spouse even when there was literally no intent to touch, much less harm, on behalf of Mr. Harley. That may not be true, but we've got to accept that for summary judgment, no? To answer your question, I think the answer is no. These cases do not proceed by looking on an individualized basis into the manner in which one particular crime was committed. I know we were discussing earlier the G-1 felon in possession cases. I'm not aware of any case in that context either where the particular circumstances of how the crime was committed or how the plaintiff challenger has gone on to live his or her life. Hamilton suggests that very thing, no? I disagree, Your Honor, respectfully, and I'm glad to have a chance to return to talking about Hamilton and also Binderup. The court in Hamilton expressly declined to adopt the seriousness analysis from the Binderup court, and I would add several important things there. The Third Circuit in Binderup rejected the relevance of the passage of time or evidence of rehabilitation. A majority of judges, even though as much as Binderup is very much an outlier of a decision, a clear majority of judges rejected what plaintiff seeks to rely on here, that evidence of rehabilitation and passage of time as relevant to the analysis. And, of course, the Third Circuit in Binderup, under exceptional circumstances there, that is the only court of appeals decision to hold one of the federal prohibitions unconstitutional. But the court didn't do so on the basis that it thought that Daniel Binderup and Mr. Suarez were now upstanding citizens. The reasoning that the court employed was that it thought that the government hadn't carried its burden. And, of course, the propriety of relying on empirical studies, as we've done here, and as was before the district court, was not at issue, but the court found simply that the government had not carried its burden by introducing relevant empirical studies, tending to show the link between recidivism and the misdemeanor crimes at issue there, which, again, were exceptional misdemeanors under Pennsylvania law. And, of course, G1 and the misdemeanor portion of that statute are not at issue here. I'd make one other point, though, with respect to Hamilton, and I believe in that footnote that Your Honor is referring to the court also cited to the Tyler decision in the Sixth Circuit. And I know my friend on the other side seeks to rely on Tyler to support his position, but that support is misplaced. Yeah, Ms. Traer, I guess I'm having trouble. Maybe you can get me back on track. At Appendix 175, Judge Ellis makes it really clear that he is holding that the defendant's conduct met the definition of domestic violence. Isn't that correct? Yes, that's correct. All right. Is it also correct that it hasn't been challenged in this appeal? Yes, that's absolutely correct, and thank you for clarifying that point. Well, in fact, wasn't it conceded below? This is under G9. There has been no contention on appeal here that the underlying conviction is a qualifying conviction. I know, to Judge Richardson's point earlier, I know that my opponent today, there have been affidavits introduced claiming that one incident by the Potomac was the predicate involved with the behavior of the underlying conviction. As we noted in our briefs at Footnote 1, I believe the record is quite clear that the plaintiff was arrested on May 21st, 1993, the same day a police report, ECF Docket Number 17, indicates that in an altercation where the plaintiff dropped off his children, there was a physical altercation ensued, pushing and shoving and ultimately striking his wife. I guess what I'm trying to ask is, why are you belaboring this? I'm sorry, I don't mean to belabor the point, just for the sake of clarity for the court's cognizance. I mean, if he had placed the issue before us and said in his statement of issues that I didn't commit a crime of domestic violence, it might be different procedurally, but he hasn't done that. I'm sorry, I didn't mean to interrupt. I believe we just started down this route in response to the hypothetical that Judge Richardson posed, but I completely agree with your honor. The circumstances surrounding plaintiff's conviction, which is not at issue, the propriety of that serving as an underlying conviction, is not at issue here. And to Judge Wynn's earlier point, if this court were to embrace plaintiff's theory, which would be contrary to the court's decision in Staten, also contrary to the court's other jurisprudence in this area, the G-8 decisions, Chapman and Mahan, for example, that would, to Judge Wynn's earlier point, open up this area of the law to individualized ad hoc inquiries where any plaintiff can come into federal court. More to my concern is this is a G-9 case. There's no question about that, that that's what it is. It's a policy choice by Congress. You can talk about Hamilton for days, but it's a G-1 case. And if you look at G-1, that's a whole different ballgame. Congress did not put that in there to fill a gap. They did this for a gap. They saw that there would be misdemeanors who are domestic violence, and they attached this gun deal to it. You know, Congress did that, and they did it on a specific offense. If they want to fix it, they ought to fix it, or some other way. But I don't think we are in a position to do that unless we, and this is not a facial challenge to it, this is a challenge as applied, but we already know. But let me go in terms of the individualized assessment. When you're looking at the Chester factors, if we assume one, which virtually everybody has done, the first prong, you get into the second one, it looks like to me there's no reason to look at anything individualized in dealing with the second one. And maybe there might have been a district court or someone who has done it, but most people have not done that. I don't see a reason to go, or do you, to get into individualized assessment factors and look at the second prong of Chester. No, and I think the G1 cases, to some extent, are helpful in analogizing here when an individual is convicted of a felony, the fact of that conviction necessarily removes that individual from the class of persons who historically have ever enjoyed that right. That's Hamilton and, of course, all the other circuit courts who have confronted the issue. And as a traditional historical matter, the legislature has always been able to permissibly disarm individuals who are not law-abiding or responsible, and that certainly applies to plaintiffs here as a domestic violence misdemeanor under G9. And to go back to Hamilton again for one moment and to the Seventh Circuit's decision in Scoyne, I know that my opposing counsel relies on Scoyne in his briefing, and there have been some questions about the relevance of the G1 prohibitions. This isn't in the briefing, but just for the court's cognizance, as you may be aware, the Seventh Circuit in the wake of Scoyne in Hatfield and Cantor, those are other G1 cases. First of all, I think it is a misstatement to read Scoyne as endorsing some kind of individualized as-applied challenges for all the reasons we've discussed. But to the extent there was any doubt on that score, the Seventh Circuit has gone on in Cantor and Hatfield and in evaluating so-called as-applied challenges by nonviolent felons to reject those also under an intermediate scrutiny analysis and rejecting arguments like those presented by plaintiff here that recidivism and the passage of time somehow bear on this analysis, which I'd also point out not only is there no support for that contention in this court's precedent in Statton, Chapman, Mahan, nor is there any support for that proposition in the Supreme Court's decision in Heller. Are there no further questions? No, thank you very much. Thank you. Mr. Millard, your rebuttal. Thank you. If it pleases the Court, Congress can pass all kinds of legislation and they can have all kinds of good motives behind their doing it. That doesn't mean by that fact alone that it is wholly and untouchable. And it is something that could be considered by the courts because the courts have the obligation to determine whether or not whatever their intent was, did they do a good and decent job. And the question in this case is whether or not an individual is entitled not to an as applied to the category, but is entitled to an as applied as to themselves individually. And that's what this case is about. It's not the category. It's not Congress's findings. Because if Congress's findings were bad, the category was bad, then we'd be in a situation where there would be a facial challenge. But we're not there. We have to look at whether or not in the Fourth Circuit, an individual is entitled to an as applied challenge that looks at them as a person and their circumstances, which is a language that comes out of Inslee and other cases dealing with those kinds of things. Mr. Miller, if you could help focus us then, what are the characteristics of Mr. Harley that suggest that the statute should not be applied to him? I mean, you've got to point to his. What are the characteristics existing? And all of you've talked about, it seems to me, is the fact, first, that he didn't really do that much. But Judge Ellis found that this was a conviction for domestic violence. And the second, you suggest he's been a model citizen, which is certainly to his credit. But don't there have to be characteristics that suggest that the statute was not meant to be applied to him as opposed to good behavior? And here's what they are. Well, Judge Ellis said that even in pages, Joint Appendix 166 through 168, even if he was a Nobel laureate, it wouldn't make any difference. So that means he doesn't care about characteristics. But the characteristics are he started at Fairfax Department of Public Works in the war area as a common laborer, a ditch digger. He retired 20 some years later as a highly skilled electrician, having learned on the job and put himself through courses where he received a higher degree. And not just really somebody to change wires. But I knew it was a title schedule to electrician, went on and opened his own business after he retired and is doing well in that. He was a volunteer fireman, first in Lorton, then in Dale City. The Dale City Volunteer Fire Department made him their chief, which is not just that he's doing something nice, but that's an endorsement by the community and by the community of firefighters to make him the chief of the department. He was later elevated to be on the board of directors of that department, which is a confidence in him. That is an exhibition, if you will, of how the community considers him and the kind of person he is. Not just that he has no prior convictions, but that he has the confidence of his community in those many ways. He received an award. I think it was called the Green Cross, a lifesaving encounter. He did as a fireman with the jaws of death, getting somebody out of a situation so they were alive and not dead. He was fireman of the year, has been fireman of the month. He has not just things that he did, but he has evidence of community support and the way the community looks at him as an individual. It's not really passage of time. It's how do the people where he lived think about him. He wouldn't have those positions if they didn't think about him that way. Well, I don't understand that. Because that seemed to indicate that you're saying someone who is a model citizen right now, who also has a domestic violence conviction, that that person is outside of 922 G9. But it seems to me really what you're talking about here is passage of time, because there's nothing to do with being a model citizen. It's about do you have the conviction? And it is right there. But here you've got a passage of time. Now, you've got two cases, one from the 11th Circuit, one from the 6th Circuit, and the other, I think, from the 9th Circuit, that go directly against you on this whole as-applied business in the way you postulate it. The Stemmon case and the Fisher case both are opposed to you because we'd have to create a circuit split to frame this thing the way you do it. Tell me of a case that would put it the way you are putting it. I don't know of a case on point that's dealing with 922 G9. I understand there's G1 cases and all other stuff out there, but what case has done that? Well, the Fisher case was a challenge to the Hawaiian law and was out of the 9th Circuit. He was harassing his wife and his daughter, 1997, and that was in 2017. So you had a nice passage of time. The same kind of thing here. I think the Stemmon case was a 1997 case, too. Both misdemeanor-type cases, and they both indicated they rejected as-applied challenge, individually or otherwise, to 922 G9. In Stemmel, the evidence, as I recall, was that he was looking at it as himself as an individual. And Fisher, as I understand it, was not looking at himself as an individual either. And Fisher relied on Chauvin, which is another 9th Circuit case. And in Chauvin, the guy had a record of more than one event and some recent stuff. And in Chauvin, they looked at him more individually than they did in Fisher. Fisher was not this kind of challenge, and neither was Stemmel. Stemmel was going to the ATF, and they're trying to say, well, I've got my civil rights restored, so I should be allowed to do it. And they said no. But the issue that you need to consider, if you would please, in addition to this, is that in Virginia, you can commit this offense as defined by Congress by an unwanted touching. And that's the law of the state of Virginia. So under the 9th Circuit. There's no question that this is a domestic violence matter we're talking about here. Whether we go back and look at the underlying facts and try to go back and unravel what he actually did is one thing. But it is clear, as Judge Keenan has pointed out, and as the record shows, you even conceded this below, that this is a G9 offense. Now, if we go back and look at the underlying offense and what actually happened, that's a whole different ballgame. Congress knew this when it enacted this statute. Congress knew. That was why it did it. It was called a gap. It knew that it did not apply to misdemeanor offenses. And so it chose to do this. It did all these studies and all that other stuff. And if you get back into the constitutional analysis, I think we're in immediate scrutiny. And the question then becomes, is this satisfactory under that standard? And everything points in that direction. It's outside of our value. You're looking at a facial challenge and nothing else. And I'm saying that with all respect to your analysis, that this is not a facial challenge. And that's the analysis that you're giving. That's why I pointed you to those two cases that show it right there, that there's not an as-applies challenge. And that applies also to the Chauvin case. So how does the court answer this question? Okay. Excuse me, Mr. Miller. I think that you're now two minutes over. Thank you. We appreciate your position. And I'd like to say on behalf of the panel to both counsel, you've done an excellent job. And the circumstances are not ideal as far as your presentation. But you've made our job a lot easier today by your very thoughtful and professional presentation. So thank you very much. And the court will stand in recess at this time. We thank the court for their time. This court stands adjourned. Godspeed, guys.
judges: Barbara Milano Keenan, James A. Wynn Jr., Julius N. Richardson